## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| REVERAND PAUL CLARK | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 19-2610 |
| ALBRIGHT COLLEGE | : | |

## MEMORANDUM

**YOUNGE, J.**                                                   **MARCH 15, 2022**

In this action, Plaintiff Reverend Paul Clark ("Clark") alleges that his former employer, Defendant Albright College ("Albright"), unlawfully discriminated and retaliated against him in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, Title VII, 42 U.S.C. § 2000e *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. Ann. § 951 *et seq.*  (*See generally*, Amended Compl., ECF No. 14.)  Presently before the Court is Defendant's Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Mot., ECF No. 16.)  The Court finds this matter appropriate for resolution without oral argument.  Fed. R. Civ. P. 78; L.R. 7.1(f).  For the following reasons, Albright's Motion will be granted, and Clark's Amended Complaint will be dismissed without prejudice.

## I.      FACTUAL AND PROCEDURAL BACKGROUND[1]

Reverend Paul Clark, an Ordained Minister of the United Church of Christ, was first employed by Albright in 1975 as a library clerk. (Am. Cmpl. ¶ 13, 14.) In September 2003, Clark took a full-time, salaried position as a Chaplain. (*Id.* ¶ 15.) Clark was later appointed as Director

---

[1] Unless otherwise noted, the factual background is derived from Plaintiff's Amended Complaint.

of Albright's Multi-Faith Center. (*Id*.) In his position at Albright, Clark was available to students, faculty, and employees for religious services and counseling services. (*Id*. ¶ 17.)

While an employee at Albright, Clark requested and received an ADA accommodation for a seizure disorder. (*Id*. ¶ 45As a result of his accommodation, Clark's workday began at 9:30 a.m. rather than 8:00 a.m. (*Id*.) Occasionally, early morning events such as meetings and prayer sessions were scheduled before Clark's workday began. (*Id*. ¶ 46.) During the span on Clark's employment, he was never subject to any performance or disciplinary actions, nor were any complaints made regarding his availability. (*Id*. ¶ 34, 45.)

During the course of his employment, Clark became acquainted with Rachel Youse ("Youse"), a student at Albright. (*Id*. ¶ 23.) Youse revealed to Clark her experiences with James Gaffney, a professor within Albright's English department and Youse's instructor. (*Id*. ¶ 22.) Youse claimed Gaffney, a Roman Catholic priest, made lewd and suggestive comments towards her, and engaged in inappropriate behavior while he was her professor. (*Id*. ¶ 22.)[2] Following these counseling sessions, Clark encouraged Youse to report this conduct to the Dean of Students, Gina Crance ("Crance"). (*Id*. ¶ 24.) Youse and Clark both reported Gaffney's conduct to Crance individually. (*Id*.) Thereafter, Youse obtained the services of Attorney Joseph Bambrick in order to pursue several claims against Gaffney. (*Id*. ¶ 25.)[3]

In September 2018, several of Albright's personnel began making harassing comments to Clark based on his role in reporting Gaffney and counseling Youse. (*Id*. ¶ 28.) Albright's President, Jacquelyn Fetrow ("Fetrow") and Vice President, Samantha Wessner ("Wessner")

---

[2] In August 2018, the Office of the Attorney General released a report regarding its investigation into Gaffney and several other "predatory priests." (*Id*. ¶ 27.)

[3] Youse filed suit against Gaffney in January 2019 in the Eastern District of Pennsylvania. *See* Dkt. No. 19-cv-0075, *Rachel Youse v. Albright College and James Gaffney*. Youse has since dismissed her claims against Albright and Gaffney.

made statements to Clark questioning his status as an ordained minister, asking him to prove his credentials, and informing him that he could "be gone at any time." (*Id*.)

On September 7, 2018, Clark was called into a meeting with Fetrow, Wessner, Human Resource Officer Emily Santos, and Chief Security Officer Mike Gross. (*Id*. ¶ 29.) During this meeting, Santos and Fetrow indicated they were worried about Clark and were concerned for his mental health. (*Id*. ¶ 30.) Clark, who had never previously reported any issues with his mental health, denied any cause for concern regarding his well-being. (*Id*. ¶ 29.) Fetrow and Wessner began to make harassing statements to Clark, questioning his integrity and claiming they no longer found him trustworthy. (*Id*. ¶ 30.) Clark questioned whether the meeting was an attempt to procure his resignation. (*Id*. ¶ 32.) Santos suggested Clark could resign or retire, both of which Clark declined. (*Id*. ¶ 37.) At the end of the meeting, Clark was placed on administrative leave without pay. (*Id*. ¶ 31.)[4] Clark was not provided with a notice of charges, nor any document formalizing the basis upon which Albright determined the leave was necessary. (*Id*. ¶ 32.)[5] Fetrow, Wessner, and Santos indicated they would send a letter to Clark outlining further actions he would need to take in order to be reinstated to his position as Chaplain. (*Id*.)[6]

Following Clark's placement on administrative leave, Fetrow contacted the Pennsylvania Southeast Conference United Church of Christ. (*Id*. ¶ 38.) Fetrow made undisclosed comments meant to disparage Clark's reputation and character. (*Id*. ¶ 39.)

On September 27, 2018, Clark met with Kathy Hubric and requested an appeal of the decision to place him on administrative leave. (*Id*. ¶ 62.) This request was denied. (*Id*. ¶ 64.) Hubric encouraged Clark to retire from Albright, which he declined do. (*Id*. ¶ 38.) In

---

[4] Clark remains on administrative leave. (*Id*. ¶ 72.)
[5] According to Clark, Albright's employee handbook requires notice and gradual disciplinary steps before discharge. (*Id*. ¶ 33.)
[6] Clark never received a letter. (*Id*.)

December 2018, Wessner issued a college-wide announcement that Clark was retiring from Albright. (*Id*. ¶ 70.) On October 10, 2018, Clark requested to see his personnel file. (*Id*. ¶ 61.) His request to do so was denied without explanation. (*Id*. ¶ 62.)

In 2019, Clark filed a complaint with the Equal Employment Opportunity Commission ("EEOC") (EEOC Case No. 530-2019-01290). (ECF No. 16, Ex. 2.)[7] On March 20, 2019, the EEOC dismissed Clark's claims. (*Id*. p. 9.) It determined it lacked jurisdiction over the matter since Albright, a religious educational institution affiliated with the United Methodist Church, was exempt from liability regarding its employment decision with Clark, a minister. (*Id*. (citing *Hosanna-Tabor Evangelical Lutheran Church & School v. EEOC*, 565 U.S. 171 (2012)).)

Clark filed suit in the Eastern District of Pennsylvania on June 4, 2019. (ECF No. 1.) Albright filed a Motion to Dismiss Clark's claims, ECF No. 5, which was granted by this Court on December 23, 2019 ("2019 Order"). (ECF No. 11.) Thereafter, Clark filed an Amended Complaint on March 4, 2020. (ECF No. 14.) In his Amended Complaint, Clark alleges Albright constructively terminated him from his position based on his age (Count I), religion (Count III), disability (Count IV), and sex (Count V). Further, Clark alleges discrimination as a result of "retaliation and harassment," in which he claims Albright generally engaged in a course of antagonistic behavior (Count II). Lastly, Clark alleges a claim based on retaliatory discharge and related state claims (Count VI). On March 19, 2020, Albright filed the instant Motion to Dismiss. (ECF No. 16.) Clark filed his opposition to Albright's Motion on April 17, 2020. (ECF No. 18) Albright filed a reply on April 4, 2020. (ECF No. 19.)

---

[7] Clark also filed a complaint with the Pennsylvania Human Relations Commission ("PHRC") (PHRC Case No. 201803135). (Am. Compl. ¶ 48.) The PHRC closed his claim and issued a Notice of Right to Sue. (*Id*.)

## II.     LEGAL STANDARD

Rule 12(b)(6) provides for the dismissal of a complaint for failure to state a claim upon which relief can be granted.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed.  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

In deciding a motion under Rule 12(b)(6), we may consider "only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer*, 605 F.3d at 230.  We must "accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff." *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp*, 908 F.3d 872, 878–79 (3d Cir. 2018).  "However, 'we disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements.'" *Id.* at 879 (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)).

Evaluation of a Rule 12(b)(6) motion entails a three-step analysis:  (1) "[the district court] must tak[e] note of the elements [the] plaintiff must plead to state a claim"; (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth'"; and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Connelly v. Lane Constr. Corp*., 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).  The plausibility determination is a "context-specific task

that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*,
556 U.S. at 679.

Finally, when a motion to dismiss is granted, the court must decide whether to grant leave
to amend.  The Third Circuit has a liberal policy favoring amendments and, thus, leave to amend
should be freely granted.  *See, e.g., Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000); *Dole v.
Arco Chem. Co*., 921 F.2d 484, 486 (3d Cir. 1990).

## III.   DISCUSSION

Albright moves the Court to dismiss all claims asserted against it, arguing that Clark has
failed to allege sufficient facts to establish its employment action was based on a prohibited
reason. (Mot. at 13-25.) Albright argues that Clark's motion does not establish a cause of action
for discrimination based on any of the aforementioned civil rights statutes; rather, Clark plainly
claims Albright's employment action occurred as a result of his role in counseling Youse.[8] We
examine each of Albright's arguments in turn.

### A.   Insufficient Factual Allegations to Plausibly Suggest Age Discrimination in Count I

In his Amended Complaint, Clark alleges Fetrow, Wessner, and Santos, all of whom are
younger than Clark, demeaned and intimidated him during the September 7, 2018 meeting. (Am.
Compl. ¶ 52.) He claims that during the meeting, he was humiliated and insulted by the three
women, all of whom "[engaged] in the demonstration of power and dominance over an older
person of male gender." (*Id*. ¶ 54, 55.) Further, he claims "age was a central factor amongst

---

[8] Alternatively, Albright argues it is excepted from liability under federal employment statutes based on
the fact it is a religious organization that made an employment decision regarding one of its ministers.
(Mot. at 9-13.) Since Albright's motion is granted on other grounds, this Court does not reach this issue.
This Court notes the initial persuasiveness of Albright's argument regarding the application of the
ministerial exception. However, we decline to rule on this issue, given the underdeveloped nature of
Albright's argument in its briefing.

management at the level of his position" at Albright, and that he was "treated differently because of his age" as demonstrate by Albright's encouragement that he retire (*Id*. ¶ 55.)

In its motion, Albright argues Clark fails to set forth a non-conclusory, well-pleaded factual allegation that demonstrates age was the but-for cause of any adverse employment action. (Mot. at 16.) Rather, the crux of his argument alleges his role in counseling Youse, which led to the September 7, 2018 meeting, was the reason for Albright's employment decision. Albright further points out that Clark fails to specify whether the insults he alleges were ageist in nature. (*Id*.)

The ADEA prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age," 29 U.S.C. § 623(a)(1), protecting workers "who are at least 40 years of age," 29 U.S.C. § 631(a).  A plaintiff alleging that he was subjected to adverse employment action, such as failure to hire, in violation of the Act must show that his "age was the but-for cause of the employer's adverse action."  *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009).  It is not enough for a plaintiff to show that his age was a factor that motivated the employer's action; he must instead point to evidence that could support an inference that his age had a "determinative influence" on the decision.  *Id*. at 176.  This burden remains squarely with the plaintiff, who may prove his claims through direct or circumstantial evidence.  *Id*. at 177. Direct evidence demonstrates on its face that the employment decision was reached for discriminatory reasons.  *See Katchur v. Thomas Jefferson Univ.*, 354 F. Supp. 3d 655, 665 (E.D. Pa. 2019) ("[D]irect evidence is overt or explicit evidence which directly reflects discriminatory bias by a decision maker.") (internal quotation marks and citation omitted).

This Court finds Clark has not alleged sufficient facts to make out a prima facie case of age discrimination. Clark sets forth many conclusory statements focusing on his treatment by Albright's leadership which do not plausibly support the inference of liability under the ADEA. He argues "age was a central factor," and that he was "treated differently because of his age," but he fails to provide specifics. (Am. Cmpl. ¶ 51, 55.) Clark also fails to provide further detail regarding the insulting language Albright allegedly used to "demean and intimidate" him, or even that it was ageist in nature. Clark does provide one quote regarding "old white men" running the town in which Albright is located, (*Id*. ¶ 53), but he does not elaborate as to how this comment translates into a prima facie case of discrimination he specifically experienced. Moreover, Clark does not connect this allegedly demeaning conduct to an adverse employment action. Rather, Clark focuses on the fact that individuals who are younger than him affected his employment with Albright. This focus is misplaced since the ADEA focuses on the age of the employee, rather than the employer or its agent. Further, Clark offers that the real reason for Albright's employment decision is his counseling of Youse, not any protected status under the ADEA or any other civil rights statute. (*Id*. ¶ 20.) Since Clark fails to set forth sufficient evidence that age was the "but-for" factor in Albright's employment decision, he does not set forth a cognizable claim and thus, this claim is dismissed.

### B.    Insufficient Factual Allegations or Legal Basis to Support an Unspecified Claim for Retaliation and Harassment in Count II

In his claim for retaliation and harassment, Clark argues he suffered a course of retaliatory actions on behalf of Fetrow, Wessner, and Santos. (*Id*. ¶ 60.) Clark claims, for example, he was required to submit to background checks and fingerprinting, which was not required of other employees. (*Id*. ¶ 58.) He argues that he was told on several occasions that Albright's leadership lacked trust in him, and that he demonstrated no integrity. (*Id*. ¶ 60.)

Further, he argues Albright continued to schedule early morning meetings, despite Clark's inability to attend due to his accommodated start time of 9:30. (*Id*. ¶ 59)

Clark also argues he was harassed by virtue of his inability to exercise his rights under Albright's Employee Handbook. (*Id*. ¶ 67.) After the meeting on September 7, 2018, Clark argues he requested to initiate a grievance review, which was subsequently denied. (*Id*. ¶ 68.) At the time of Clark's denied request to have his status on unpaid administrative leave reviewed, he alleges he was encouraged to retire. (*Id*. ¶ 66.) Clark lastly asserts he never received a termination letter from Albright, which again he claims was designed to harass and embarrass him. (*Id*. ¶ 70.)

Albright argues that first and foremost, Clark has failed to identify a legal basis upon which his claims for retaliation and harassment rest. (Mot. at 16-18.) Albright claims in addition that Clark has failed to identify any protected activity in which he engaged, and failed to correlate the protected activity to an adverse employment action. (*Id*. at 17.) Even assuming Clark had identified a specific legal basis, Albright argues his claims are still insufficient because he still has not alleged any facts to prove a claim for retaliation or harassment under either the ADA, Title VII, or the ADEA. (*Id*. at 16-17.)[9]

The ADA, Title VII, and the ADEA all share similar anti-retaliation statutes. *See* 42 U.S.C. § 12203(a) (ADA) ("No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."); 42 U.S.C. § 2000e-3(a) (Title VII) ("It shall be an

---

[9] Albright argues that Clark's claim for harassment on the grounds he was denied a reasonable accommodation under the ADA is duplicative of his later claim. To the extent this is true, this Court addresses Clark's claim for disability discrimination *infra*.

unlawful employment practice for an employer to discriminate against any of his employees . . .

to discriminate against any individual . . . . because he has opposed any practice made an

unlawful employment practice . . . or because he has made a charge, testified, assisted, or

participated in an manner in an investigation, proceeding, or hearing under this subchapter."); 29

U.S.C. § 623(d) (ADEA) ("It shall be unlawful for an employer to discriminate against any of his

employees . . . because such individual . . . has opposed any practice made unlawful by this

section, or because such individual . . . has made a charge, testified, assisted, or participate in any

manner in an investigation, proceeding, or litigation under this chapter."). These statutes all share

the common element that a party must prove they engaged in a protected activity. Protected

activity is defined as "opposition to an illegal employment practice" in a way that "identif[ies]

the employer and the practice, if not specifically, at least by context." *Cuary-Cramer v. Ursuline

Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 135 (3d Cir. 2006). In general, these anti-

retaliation statutes are interpreted in uniform. *See Fogelman v. Mercy Hosp., Inc.*, 283 F.3d 561

(3d Cir. 2002) ("Because the anti-retaliation provisions of the ADA and ADEA are nearly

identical, as is the anti-retaliation provision of Title VII, we have held that precedent interpreting

any one of these statutes is equally relevant to interpretation of the others.") "A general

complaint of unfair treatment is insufficient to establish protected activity." *Id.*

Similarly, a claim for harassment is actionable under the ADA, Title VII, and the ADEA

through a hostile work environment theory. In order to prove a hostile work environment claim

under the ADA, a party must demonstrate (1) he is a qualified individual with a disability under

the ADA, (2) he was subject to unwelcome harassment, (3) the harassment was based on his

disability or request for an accommodation, (4) the harassment was sufficiently severe or

pervasive to alter the conditions of his employment and create an abusive working environment,

and (5) the employer knew or should have known of the harassment and failed to take prompt, effective remedial action. *See Lowenstein v. Catholic Health East*, 820 F. Supp. 2d 639, 646 (E.D. Pa. Oct. 26, 2011). In order to prove a similar claim under Title VII or the ADEA, a party must prove: (1) intentional discrimination because of one's protected status, (2) the discrimination was severe or pervasive, (3) the discrimination detrimentally affected the litigant, (4) the discrimination would detrimentally affect a reasonable person in like circumstances, and (5) the employer knew or should have known of the harassment and failed to take prompt, effective, remedial action. *See Power v. Lockheed Martin Corp*., 419 F.Supp.3d 878 (E.D. Pa. Jan. 14, 2020) (stating the elements of a claim for hostile work environment under the ADEA); *see also Friel v. Mnuchin*, 474 F.Supp.3d 673 (E.D. Pa. Jul. 23, 2020) (stating the elements of a claim for hostile work environment under Title VII). Importantly, each test requires that a party prove their protected status, as well as the fact that the discrimination was due to the party's protected status.

We agree that Clark has failed to set forth sufficient information to make out a claim for retaliation or harassment under any relevant theory. Clark has failed to identify any basis upon which this Court can identify an avenue for relief. Clark's Amended Complaint identifies various causes of actions that are plausibly contemplated under several different civil rights statutes; however, Clark does not identify which one affords him relief in this particular circumstance. Without a specific statute with which to compare Clark's pleading to the prima facie elements of a claim, it is impossible to tell if he has alleged sufficient information to pass the 12(b)(6) standard. Importantly, this Court is not charged with doing so, as the responsibility for identifying the type of requested relief lies with the requesting party. *See* Fed. R. Civ. P. 8(a)(2)

("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief.")

Even reading Clark's amended pleading in the most generous light possible, it is still not possible to cognize a prima facie claim. Clark has failed to identify any protected activity in which he engaged that would qualify him for the protections of any of the anti-retaliation statutes. In fact, Clark does not clearly set forth any reason for the many types of retaliation Clark alleges. Clark mentions the ADA in this count of his pleading, (Am. Cmpl. ¶ 59), but does not clearly identify whether his stated basis for the alleged retaliatory treatment is supposed to fall under this statute. To the extent Clark attempts to argue retaliation on the basis of his disability, his amended pleading suffers from the same deficiency as his original pleading as he fails to set forth any nexus upon which this Court can facially connect his disability to the adverse employment action he suffered. (*Compare* ECF No. 1 ¶ 54 *with* ECF No. 14 ¶ 59); *see also* 2019 Order at 2.)

We glean from the rest of his pleading several feasible reasons for the alleged retaliatory conduct, such as his involvement in counseling Youse, his role in encouraging her to file suit against his employer, and Albright's alleged embarrassment over the Gaffney ordeal. (Am. Cmpl. ¶¶ 5, 20, 22, 77.) Even assuming *arguendo* these are the reasons for retaliatory conduct upon which Clark relies, he has failed to set forth a prima facie case. None of these reasons articulate an actionable claim under any of the anti-retaliation statutes, as they all do not qualify as protected activity. As stated above, "protected activity" contemplates a party's opposition to an illegal employment practice. It is not simply a catch-all for unfair treatment by an employer. Clark has not set forth that he engaged in any type of conduct which opposed an illegal

employment practice, as his role in counseling Youse was not designed to oppose Albright's employment practices in any direct sense.

Clark also fails to set forth a claim under any hostile work environment theory since he is not able to relate the harassment he alleges to a specific protected status. As in his original pleading, Clark fails to explicitly identify the basis upon which he claims he was harassed. Clark seemingly highlights his disability, this time claiming his denial of a reasonable accommodation constitutes a type of harassment. (*Id*. at ¶ 59.) However, he does nothing to prove this allegation, instead setting forth his claim in a conclusory fashion. Even if Clark's claim were not conclusory in nature, he does not establish anywhere in his pleading that he was actually denied a reasonable accommodation. As discussed *infra*, Albright allowed Clark to begin his workday at a later time, and did not take any action adverse to Clark based on his inability to attend early morning events.

Clark arguably identifies other, non-ADA related reasons for Albright's alleged harassment. Besides Albright's general dissatisfaction with his role in counseling Youse, Clark also indicates his request to see "a new job description" he was promised after the September 7, 2018 as a basis for his harassment. (*Id*. at ¶ 68.) Again, these identified reasons for Albright's alleged conduct do not afford Clark protected status. As stated above, protected status stems from an identified basis under the ADA, Title VII, or the ADEA. The reasons we surmise from Clark's pleading for his alleged harassment clearly do not qualify as the type of prohibited basis contemplated under the statutes. Moreover, this Court notes that the burden is on the pleading party to identify the basis upon which he seeks relief. Since Clark has failed to set forth sufficient information to state a prima facie case for retaliation or harassment, this claim is dismissed.

### C.    Insufficient Allegations to Plausibly Suggest Religion Discrimination in Count III

Clark alleges he was harassed by Fetrow, Wessner, and Santos, who "invaded the sanctity of the religious/privacy relationship" by interfering with his ministerial practice. (*Id*. at ¶ 76-77.) Clark alleges Fetrow, Wessner, and Santos were embarrassed and upset by the public disclosure of Gaffney's predatory behavior, and thus retaliated against Clark for his role in providing counsel to Youse. (*Id*. at ¶ 77.)

In its motion, Albright argues Clark fails to set forth any new allegations in his Amended Complaint that allege religious discrimination under either a disparate treatment or failure to accommodate theory. (Mot. at 19.) Albright argues Clark fails to set forth any job requirement that conflicted with his religious beliefs, or that he suffered any adverse action based on his failure to comply with a job requirement that conflicted with a bona fide religious belief. (*Id*.)

Under Title VII, "it shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion." 42 U.S.C. 2000e-2(a). A party must first establish a prima facie case of discrimination under either a disparate treatment or failure to accommodate theory. *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313- 318 (3d Cir. 2000). Under a disparate treatment theory, a party must demonstrate that he is a member of a protected class, he was qualified for the position at issue, and nonmembers of the protected class were treated more favorably. *Abramson v. William Paterson College of New Jersey*, 260 F.3d 265, 281 (3d Cir. 2001). Under a failure to accommodate theory, a party must show he had a bona fide religious belief that conflicted with an employment requirement, that he informed the employer of the conflict, and that he was disciplined for failing to comply with the conflicting requirement. *Id.* at fn. 12.

This Court agrees with Albright that Clark has done little to supplement his claim for religious discrimination in his Amended Complaint. As this Court explained in its 2019 Order, Clark's original complaint was devoid of any well-pleaded allegations to state a claim under either a disparate treatment or failure to accommodate theory. (2019 Order at 3 ("The Complaint does not allege what protected class [Clark] asserts or how persons outside that class were treated more favorably, and it does not allege any bona fide religious belief that conflicted with [Clark's] job requirement.") Clark's Amended Complaint also fails to set forth the type of information necessary to cognize a prima facie case under either theory. Clark still does not identify which protected class he belongs to, or how people outside that class were treated more favorably. He also does not allege any bona fide religious belief that conflicts with a job requirement. Rather, Clark amended his pleading to argue that "[Clark's] behavior was the subject of embarrassment to Albright and its leadership, which was the real reason for the harm, the discriminatory treatment and damages to [Clark]." (Am. Cmpl. at ¶ 77.) By highlighting his behavior as the reason for Albright's actions, rather than his religion, Clark fails to make out even a cognizable claim for religious discrimination. Since Clark fails to plausibly set forth the prima facie elements of a case, this count is dismissed.

### D.      Insufficient Factual Allegations to Plausibly Suggest Violations of the Americans With Disabilities Act in Count IV

In his claim for disability discrimination, Clark argues Albright continuously scheduled early morning meetings, appointments, and community activities when it was known Clark's workday did not start until 9:30 a.m. due to his previously-approved ADA accommodation. (*Id.* at ¶ 84.) Albright rebuffs the sufficiency of Clark's claims by arguing Clark does not allege a causal nexus between his alleged disability and any adverse employment action. (Mot. at 19-21.) Albright argues that Clark does not even attempt to connect his seizure condition to an adverse

action. (*Id*. at 20.) Even under a failure to accommodate theory, Albright argues Clark fails to meet the pleading standard since Clark fails to plead that his absence from early morning meetings or appointments resulted in any employment-related consequence. (*Id*.) Albright points out that in fact, Clark continued to receive an accommodation for his condition with no adverse consequence. (*Id*.)

Under the Americans with Disabilities Act ("ADA"), 42 U.S.C. 12101-12213, "[n]o covered entity shall discriminate against a qualified individual on the basis of a disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. 12112(a). The ADA further prohibits discrimination by an employer's failure to "[make] reasonable accommodations to the known physical or mental limitations of the individual unless the [employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the [employer]." 42 U.S.C. 12112(b)(5)(A). Thus, discrimination under the ADA encompasses not only adverse actions motivated by prejudice and fear of disabilities, but also includes failing to make reasonable accommodations for a plaintiff's disabilities. *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999). To state a claim under the ADA for disability discrimination, a party must demonstrate the following: "(1) he is disabled within the meaning of the ADA, (2) he is otherwise qualified to perform essential functions of the job with or without reasonable accommodations by the employer, and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." *Gaul v. Lucent Technologies*, 134 F.3d 576, 580 (3d Cir. 1998) (citation omitted). In order to prove an employer's failure to accommodate, a party must allege that "(1) he was disabled, (2) he requested an accommodation that should have been reasonably done, (3)

that the employer did not make a good faith effort to assist, and (4) he could have been reasonably accommodated." *Capps v. Mondelez Global, LLC*, 847 F.3d 144, 157 (3d Cir. 2017) (citation omitted). A reasonable accommodation means measures such as job restructuring, part-time or modified work schedules, reassignments to a vacant position, acquisition or modification of equipment or devices, . . . and other similar accommodations for individuals with disabilities." 42 U.S.C. 12111(9). Both parties have a duty to assist in the search for an appropriate reasonable accommodation and to act in good faith. *Mengine v. Runyon*, 114 F.3d 415, 420 (3d Cir. 1997).

We agree with Albright that Clark has failed to set forth enough information to cognize a prima facie case under either a disability discrimination or failure to accommodate theory. Under a disability discrimination case, Clark fails to supplement his Amended Complaint with the type of information that would provide a causal nexus between his alleged disability and an adverse employment action. As discussed in this Court's 2019 Order, Clark's claim for disability discrimination lacked sufficient information to relate Albright's constructive discharge to his disability. (2019 Order at 2.) Clark's Amended Complaint suffers from the same deficiency, as he does not set forth any theory upon which this Court could connect his adverse employment action to his seizure condition.

Instead, Clark amends his complaint to include one additional paragraph suggesting Albright has discriminated against him by failing to accommodate his disability. (Am. Cmpl. ¶ 84.) Even under a failure to accommodate theory, however, Clark does not allege the type of information necessary to make out a claim. Clark claims that Fetrow "failed to continue the accepted accommodation" by scheduling events early in the morning. (*Id*.) Notably, however, Clark fails to allege any adverse action he suffered because he missed these events scheduled by Albright's staff. Clark does not argue Albright require he come in for any early morning events,

nor did his job title or compensation change. Rather, by Clark's account, he received an accommodation from Albright, which then sought coverage for events which Clark was not able to attend. Nowhere does Clark suggest he was penalized based on his inability to attend early morning events, or that any material aspect of his employment changed based on his altered work schedule. Clark has thus failed to include in his amendment the type of information necessary to make out a viable claim for Albright's failure to accommodate. Thus, this claim is dismissed.

### E.   Insufficient Factual Allegations to Plausibly Suggest Sex Discrimination in Count V

Next, Clark argues he was treated differently by Fetrow, Wessner, and Santos, all of whom are female. (*Id*. at ¶ 86.) During meetings in which he was the only male, Clark claims Albright's management would make certain comments and take certain actions that "were specifically against the male image." (*Id*. at ¶ 87.)[10] He further argues this difference in treatment happened "because of a prior issue where a complaint was filed by a female student against a male professor." (*Id*.) Because of this complaint, Clark argues Fetrow, Wessner, and Santos took actions "geared to point out the differences of female management against Clark." (*Id*.)

In response, Albright argues Clark's issue with Fetrow and Wessner does not translate into an actionable claim for reverse sex discrimination. (Mot. at 21-22.) Albright argues Clark fails to set forth a causal link between his gender and any adverse employment action, or evidence of any disparate treatment. (*Id*. at 22.) Instead, Albright argues, Clark supplements his original complaint with bald and conclusory statements that do not support an inference of sex discrimination and do nothing to satisfy the pleading requirements. (*Id*.)

---

[10] Clark does not go into further detail regarding these alleged comments or actions.

Title VII provides, in relevant part, that "[i]t shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or discharge any individual, or otherwise discriminate against an individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. 2000e-2(a)(1). To support a prima facie claim for sex discrimination, a party must demonstrate by a preponderance of the evidence that he is a member of a protected class, he was qualified for his position, he suffered an adverse employment action, and the circumstances of discharge permit an inference of unlawful discrimination. *Makky v. Chartoff*, 541 F.3d 205, 214 (3d Cir. 2008).

We agree with Albright that Clark fails to set forth a prima facie case for sex discrimination. In his Amended Complaint, Clark does not set forth much of the necessary information needed to contemplate a claim. While Clark does amend his complaint to allege he was replaced by a woman, he does not attempt to argue this replacement was anything but coincidental.[11] Instead, Clark again relies on many of the same conclusory allegations that appeared in his original brief. (*Compare* ECF No. 1 ¶¶ 65-67 *with* ECF No. 16 ¶¶ 85-87.) Clark insinuates that Fetrow, Wessner, and Santos expressed a preference for working with other women. (Am. Cmpl. ¶ 87.) Notably, however, Clark fails to go into any further detail regarding Albright's actions and comments that were "against the male image." Moreover, by Clark's own admission, his constructive discharge occurred because of Albright's alleged embarrassment concerning Gaffney, and Clark's role in counseling Youse to take legal action. (*Id*. (". . . all conversations, issues, [and] statements contained intimidating language, assertions, and actions [that] were specifically against the male image and this person's character *because of* a prior issue where a complaint was filed by a female student against a male professor . . ." (emphasis

---

[11] In fact, he includes the information regarding his female replacement in a different section unrelated to his claim of discrimination based on sex.

added).) As this Court explained, Clark failed to connect the adverse employment action he experienced to his gender. (2019 Order at 2.) His current amendments have done nothing to set forth a cognizable claim for discrimination based on sex; thus, this claim is dismissed.

### F. Insufficient Factual Allegations or Legal Basis to Support an Unspecified Claim for Retaliatory Discharge in Count VI

As his last claim, Clark alleges a count for retaliatory discharge. Clark again argues he was discharged because of his role in encouraging Youse to file suit against Albright (Am. Cmpl. ¶ 93.)  He again claims Fetrow, Wessner, and Santos continuously called him untrustworthy, told him that he lacked integrity, and in general made other allegedly defamatory remarks. (*Id*. at ¶ 92.) Clark claims at all times he was properly performing his job duties. (*Id*. at ¶ 91.) He lastly argues Albright failed to offer any reason or basis for his constructive discharge, and failed to follow its own employee handbook by doing so. (*Id*. at ¶ 93.)

In its motion, Albright argues Clark's claims are deficient because he again fails to identify any protected activity in which he engaged, nor does he set forth a causal nexus between the alleged protected activity and the adverse employment action. (Mot. at 22-24.) Albright also argues Clark has failed to set forth an alleged basis for his "pendant state claims." (*Id*. at 22.)

We agree with Albright. Nearly all of Clark's claims are identical to those he included in his Count II for "retaliation and harassment." As discussed above, Clark fails to identify the type of activity that would qualify as "protected" under the ADA, Title VII, or the ADEA. To the extent Clark alleges a new statute under which this Court could identify a prima facie case— presumably, the PHRA—Clark still does not set forth any activity that would qualify as protected under this statute. In fact, Clark clearly identifies a non-protected basis as the reason for Albright's alleged retaliation and harassment. (Am. Cmpl. at ¶ 93 (". . . because civil litigation commenced and the public became aware of embarrassment of Albright as the result of

proper and ethical counseling of Rachel Youse, all beginning with [Clark], retaliation resulted in wanting for no other reason to have him eliminated from [Albright] and its prestigious image in the community.") Even if Clark did allege any anti-discrimination statute specifically, the conduct he alleges clearly does not serve as a prohibited basis for Albright's employment decisions. Thus, Clark's claim does not meet the pleading standard as he fails to set forth a prima facie case of retaliatory conduct under state or federal law.

## IV.    CONCLUSION

For the reasons discussed above, the Court will grant Albright's Motion to Dismiss. Clark's Amended Complaint is dismissed without prejudiced. Clark is cautioned that failure to set forth prima facie elements of his claim and failure to adhere to the pleading standard may result in the dismissal of his claims without leave to amend.

**IT IS SO ORDERED.**

**BY THE COURT:**

_____
**Judge John Milton Younge**